UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-cv-23898-RAR

DONALD BLANTON,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** is before the Court upon the Parties' Notices of Hearing, (ECF Nos. 87, 88), and Defendant Carnival Corporation's Motion for a Protective Order on Inspection, (ECF No. 75).[1] The Parties jointly noticed several discovery disputes for hearing and the undersigned convened a hearing on the disputes on December 9, 2025. (ECF No. 93). Based upon the Parties' representations that they had independently resolved two of the three disputes noticed for hearing, the Court ruled only upon Plaintiff's *Ore Tenus* Renewed Motion for Oral Argument, *see* (ECF No. 88), on Defendant's Motion for Protective Order, (ECF No. 75). Plaintiff's *Ore Tenus* Motion was **GRANTED**, and Defendant's Motion for Protective Order was **GRANTED, in part**, in open court. This Order memorializes, but does not alter, the rulings made in open court at the hearing.

**I.    BACKGROUND**

This action arises from an incident occurring on September 18, 2023, on Deck 15 of the Carnival *Horizon*. Plaintiff, a diabetic passenger, claims he suffered a severe burn injury to his

---

[1] All discovery matters have been referred to the undersigned pursuant to 28 U.S.C. § 636 (b)(1)(A) and this District's Magistrate Judge Rules by the Honorable Rodolfo A. Ruiz, II, United States District Judge. (ECF No. 14).

right foot as a result of standing upon the *Horizon*'s synthetic API deck flooring surface, which Plaintiff alleges overheated to dangerous levels under intense sun exposure. Plaintiff's burn progressed to such severity that his right leg had to be amputated below the knee. Plaintiff alleges that Defendant negligently failed to take reasonable safety measures to maintain the floor on which Plaintiff was burned and failed to correct the danger posed by the API deck, resulting in Plaintiff's injury.

On September 21, 2025, Plaintiff's counsel and expert conducted an inspection of the Carnival *Horizon*. The weather conditions were cloudy on the date of inspection. Plaintiff had intended for his expert to conduct thermal testing on Decks 15 and 12 of the *Horizon* in order to determine how hot the decks' flooring could become when subjected to direct sunlight and heat. Because the weather conditions were cloudy on September 21, Plaintiff now seeks to conduct a second inspection of Decks 15 and 12 of the *Horizon* under weather conditions conducive to reliable thermal testing results. Plaintiff avers that this requires that the angle of the sun and degree of solar intensity be greater than they are in Miami between late September and May. Accordingly, Plaintiff requests inspection of the *Horizon* in Aruba,[2] a low-latitude venue with weather conditions conducive, Plaintiff claims, to effective thermal testing of the *Horizon*'s deck flooring. Defendant filed its Motion for Protective Order in response, (ECF No. 75), arguing that Plaintiff is not entitled to a second inspection because conducting such inspection, in Aruba, would effect an undue burden on Defendant in the form of attorneys' fees and travel costs.

---

[2] At the December 9 hearing, Plaintiff presented an alternative option to the Court. An inspection of a similar vessel to the Carnival *Horizon* had been scheduled, by litigants in other ongoing cases, for early January 2026. Plaintiff asked that the Court consider ruling on Defendant's Motion for Protective Order, which objected to Plaintiff's requests for inspection of the *Horizon* in Aruba, by permitting an inspection of the similar vessel in the Cayman Islands. The Court declined to do so; Defendant has been afforded no opportunity to state or substantiate what burdens would be imposed by an inspection in the Cayman Islands.

2

## II.    DISCUSSION

At the start of the December 9 hearing, the Parties represented to the Court that they had resolved two of the three disputes they had noticed for hearing. First, the Parties resolved a dispute wherein Defendant sought to compel Plaintiff's attendance at an interview with Defendant's retained Life Care Planner.[3] *See* (ECF No. 88). Second, Defendant withdrew its objection to Plaintiff's deposition of a third-party, mooting Plaintiff's noticed request to overrule Defendant's objections. *See* (ECF No. 87).

Plaintiff sought oral argument on Defendant's Motion for Protective Order Regarding Plaintiff's Request for a Second Vessel Inspection. *See* (ECF No. 87). At the hearing, Plaintiff's counsel requested an expeditious ruling, citing concerns with impending discovery deadlines and averring that, should the Motion be denied and a second inspection permitted, Plaintiff could seek a discrete extension of the Amended Scheduling Order's December 19 deadline to complete expert disclosures. *See* (ECF No. 71). The Court considered Plaintiff's proffer as to the Motion's time-sensitivity only insofar as this weighs against a finding that Plaintiff's need for the discovery is significant, if it is taken too late for Plaintiff to make use of the inspection. Though Plaintiff has known of the need for a second vessel inspection since at least September 21, 2025, he has not delayed in his pursuit of this discovery but actively sought relief first from the Defendant and then from this Court. Ultimately, I considered the timing and decided it was not so late as to preclude the relief sought.

Defendant has failed to meet its burden to show its entitlement to the protective order to prevent any second inspection from occurring. As noted at the hearing, Plaintiff alleges that he

---

[3] At the Parties' joint request, the Court **ORDERED** Plaintiff to provide, by no later than the afternoon of Thursday, December 11, 2025, dates on which the interview could take place as agreed. Plaintiff must provide dates prior to the end of the day on Tuesday, December 16, 2025.

suffered a significant injury on Deck 15 of Defendant's vessel, and the Rules of Civil Procedure entitle him to enter the premise at issue in his complaint and to inspect it.

Notwithstanding its relevance, the costs attributable to the inspection most be proportional to the needs of the case. Defendant adduced evidence to show that a second inspection will force Defendant to incur significant attorneys' fees, expert fees, and travel expenditures to attend the inspection in Aruba. Defendant explains that it must send at least one attorney from the law firms defending it here and if Plaintiff intends to send more than one attorney, Defendant claims it must have an equal number of attorneys present to guard against attorneys slipping away from the inspection and wandering unsupervised around the vessel. Defendant also avers that it must send its own expert to copy testing done by Plaintiff's expert.

I agree that extraordinary costs—those attributable to the peculiar staging Plaintiff's expert insists upon—would be disproportionate to the proffered need for the inspection. And yet, Defendant's own preferences and peculiarities leading to heightened costs should not be shifted. For example, Defense counsel's insistence on having two attorneys attend the inspection, rather than one, and on bringing Defendant's liability expert to the site of the inspection to perform testing concurrently with Plaintiff's expert, are Defendant's choices and thus costs to be borne at Defendant's discretion.

As announced in open Court, Defendant's Motion for Protective Order is denied, to the extent it sought to preclude Plaintiff from conducting a second inspection of the vessel where he claims he was injured, under circumstances mimicking those under which he claims he was injured.[4] If Plaintiff notices inspection of the vessel outside of the United States, Plaintiff shall pay

---

[4] The Parties sought an Order allowing or precluding Plaintiff's expert from examining two decks on the vessel: Deck 15 where he claims he suffered the burn, and Deck 12, which he visited around the same time he alleges he was burnt. Defense counsel acknowledged that the burden associated with a second premise inspection was only the time incurred by counsel (and the expert) who attends the inspection. Accordingly, Plaintiff was **ORDERED** to complete his

4

the reasonable travel and hotel expenses for one of Defendant's attorneys to attend and supervise Plaintiff's inspection of the vessel in Aruba.

Accordingly, Defendant's Motion for Protective Order, (ECF No. 75), was **GRANTED, in part**. By no later than **Friday, December 12, 2025**, Plaintiff **SHALL** inform Defendant as to whether it intends to conduct a second inspection of the Carnival *Horizon* in Aruba, in light of this Order. If Plaintiff elects to conduct the inspection, Defendant **SHALL** serve on Plaintiff in advance of the scheduled inspection the costs it intends to recoup on the inspection, including the reasonable cost of travel and hotel.

**DONE AND ORDERED** in open court at Miami, Florida, this 9th day of December, 2025.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

---

inspection within 3.5 hours, whether he elects to test Deck 15, 12 or both, so long as he is finished within the time allowed by this Order.